■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNARD BERGMAN, Appellant. RAMSEY CLARK, Respondent.—Order, Supreme Court, New York County, entered October 12, 1976, appointing a receiver pursuant to CPLR 5228 (subd [a]), affirmed, and that respondent recover of appellant $40 costs and disbursements of this appeal. Bernard Bergman had entered a plea of guilty in New York State Supreme Court of violation of section 77 of the Public Officers Law, which plea was part of a larger agreement dispositive of indictments outstanding in both the State and Federal courts. The subject of the present appeal involves that portion of the agreement which resulted in a confession of judgment in favor of the State of New York for $2,500,000 plus interest. In furtherance of satisfaction of that judgment, Bergman and his wife jointly assigned all of their assets to the State Prosecutor and his nominee and promised to perform all acts necessary to effectuate the assignment. The agreement also provided that the nominee of the Special Prosecutor (referred to throughout the agreement as the receiver) was authorized to sell those assets necessary to pay the indebtedness of $2,500,000 plus interest, as well as to be reimbursed for all costs incurred in connection with the assignment and receivership. The Bergmans retained a reversionary interest in the assigned assets which would remain unsold after satisfaction of the debt and payment of the ancillary costs. The Special Prosecutor applied to the court for the appointment of a receiver in order to marshal the assets and liquidate them in satisfaction of the money judgment, which motion was granted. We would affirm. The property subject to assignment in this case, consisting primarily of shares of various closely held corporations and partnerships, appears in large part to be subject to

various liens and encumbrances. Some assets listed appear to be chimerical in nature since they are presently effectively uncollectible or incapable of liquidation. This complex web of assets of uncertain liquid value would best be untangled by a receiver, acting solely to marshal and liquidate the assets, rather than by the Special Prosecutor, whose mandate is to investigate, ferret out, and prosecute miscreants of the nursing home industry. Furthermore, in view of the reversionary interest of the Bergmans in the assets remaining, it would be best that a receiver, appointed and supervised by the court, be responsible for the sale of the assets. The monitoring by the receiver and any experts utilized by him in the administration and sale of the property would be the best way to assure the maximum return of the moneys defrauded from the People of the State of New York. The agreement provides that the costs of administration and sale are to be paid through these same assets. Since specialized properties are involved, one could reasonably contemplate the hiring of personnel familiar with the nursing home industry—whether that hiring be done by the Special Prosecutor or by the receiver. It would be impractical and somewhat unreasonable to delegate those duties to another State bureau not specially designed to handle these matters. Even were such delegation made, it would inevitably result in hiring of an additional specialized staff to handle this matter, which staff would be paid for in any event from these same assets. We have therefore concluded that, under all the circumstances of this case, the appointment of a receiver was proper. Concur—Lupiano, J. P., Lane, Nunez and Lynch, JJ.; Capozzoli, J., dissents in the following memorandum: The result of the discussions between the defendant and the representatives of the State is that the defendant has confessed judgment in favor of the People of the State of New York for $2,500,000. Both the defendant and his wife also executed a general assignment whereby both assigned to the O. S. P. Nursing Home Restitution Fund and to any nominee selected by the Special Prosecutor, all their right, title and interest in all of their property as of September 14, 1976, or which would thereafter be acquired by them. It would seem that the Special Prosecutor has complete power to designate any nominee he chooses, without court order, to engage in the collection of the judgment. Under the terms agreed upon between the parties the Special Prosecutor's nominee, whoever he may be, has the power to liquidate, sell and dispose of all the property, real or personal, wherever situated, covered in the general assignment, to provide funds to satisfy the defendants' obligation to pay the amount of the judgment to the judgment creditor, the People of the State. I can see no reason for the appointment of a judicial receiver. The State has plenty of resources to enforce the collection of this judgment. From what appears in the record there is nothing specifically set forth to indicate that the State has reached a point where it needs outside help in the person of a judicial receiver. It is well recognized that expenses and commissions of a receiver are ultimately to be paid by the judgment debtor, to the possible detriment of the assets to which the judgment creditor looks for payment. It is to be noted that, in this case, the receiver designated has already sought authority from the court to retain "legal counsel and such other consultants as I deem necessary". The other consultants undoubtedly will include accountants, appraisers and others. One can readily understand that the expenses which will be incurred if a judicial receiver is appointed will be heavy and, certainly, greater than would be the expense if the original understanding were carried out. Let us also keep in mind the commissions of the receiver. Whatever unnecessary expenses may be incurred may result to the detriment of the State. Why should this be?

What need has been demonstrated for it? The argument advanced on behalf of the respondent that the use of the word receiver in the document signed on September 14, 1976 by both Bergmans, evinced an intention that the parties intended to appoint a judicial receiver is far from convincing. The pertinent language in that document is found as part of paragraph 1 and is as follows: "it is our intention, and we hereby assign to the O.S.P. Nursing Home Restitution Fund, and to any nominee (hereinafter referred to as the receiver) selected by the Special State Prosecutor, Charles J. Hynes, to act in this matter on behalf of the State of New York and said Fund, all right, title and interest held by us directly or indirectly, in all property, real and personal, wherever situated, this assignment being for the purpose of the liquidation, sale and disposal by the said receiver of such of said property as is necessary to provide funds to fully satisfy Bernard Bergman's obligation to pay to the O.S.P. Nursing Home Restitution Fund the sum of two million, five hundred thousand dollars ($2,500,000), as set forth in paragraph 8 of Exhibit A and in Bernard Bergman's letter of August 23, 1976, addressed to Price, Waterhouse & Company, attached hereto". If the parties had really intended to have a judicial receiver appointed by the court would it not have been a simple matter to say so? I cannot equate the use of the word nominee by Mr. Hynes with a judicial receiver. I doubt whether Mr. Hynes himself believed that the use of the term nominee was the same as a judicial receiver because, at the time of the imposition of sentence on Doctor Bergman, Mr. Hynes personally stated to the sentencing Judge the following: "he [Dr. Bergman] has turned over with the signature of his wife also on these documents, he has effectively turned over all his assets to the State in care of my office. As a further precaution to the repayment of the $2.5 million, that is that these will be sold off piecemeal, your Honor, by an *agent that I will name,* in full restitution of the $2.5 million, with eight and a half per cent interest". (Emphasis supplied.) Later, at page 37 of the same minutes, we find: "MR. NEWMAN: Your Honor, I am sorry to interrupt you. You used the language promise to pay. So that—it just occurred today—we have signed all of our assets to the State of New York. We have nothing left. THE COURT: All right. MR. NEWMAN: They can liquidate it as they see fit. THE COURT: I understand that, Mr. Newman. You are quite correct." Nowhere in addressing the court is there any expression by the Special Prosecutor of any expected appointment of a judicial receiver. Of course, such a receiver would not be named by the Special Prosecutor, but by the courts. This was not what the Special Prosecutor had in mind. From the language he employed it seems clear that he knew that, by appointing his own agent, he would be in better control of the whole situation and could deal with the assets involved in whatever manner he thought best for the interests of the State, without seeking court approval. In fact, he would have more power than a receiver. In any event, since it was agreed that defendant has no property left, no receiver is necessary. Up to the present time, except for some conclusory statements, no reason has been shown by the respondent why there should be a deviation from the original agreement entered into. If there has been a failure on the part of the defendant to discharge any particular duty which he assumed, respondent may move the court for relief upon proper factual averrments. For the reasons stated I dissent from the conclusion reached by the majority. I would reverse and deny the motion for the appointment of the receiver.